GRIMES, Judge.
A stockholders’ derivative suit involving Sarasota Kennel Club, Inc. was settled pursuant to a consent judgment which placed certain obligations upon the management of the corporation. Several years later, one of the original plaintiff-minority stockholders complained of violations of the judgment and petitioned the court for enforcement. This is an interlocutory appeal by the corporation from the court’s “Order on Motion to Require Compliance with Judgment.”
The original complaint alleged many improprieties on the part of the directors and the majority stockholders. The litigation was protracted. The “Judgment Approving Settlement Agreement,” which comprised twelve pages, provided in part:
‡ ij: sK * * *
“5. The Corporation, as Lessee, and Jerry Collins, as Lessor, shall enter *29 into a ground lease for the land on which the Corporation’s race track is located . . . with the following provisions:
jfi % ij< ;jí % %
(b)The rental shall he paid annually and shall be based upon the net profits of the Corporation (before income taxes and such rent) and shall be at the rate of 20% of such net profits of the year 1968 and shall decrease at the rate of 1% per year thereafter (e.g. 19% of the net profits for 1969) until the percentage reaches 10%, which shall thereafter be the rate of rental; provided, however, that such rent shall never exceed $250,000 per year.
>(i % ;}c
“9. All net cash available at the end of any fiscal year of the Corporation shall be declared and paid as dividends to stockholders of the Corporation. ‘Net cash’, as herein used, means all cash of the Corporation on hand and in banks, minus the following:
(a) A reserve of $350,000 to be used to construct a clubhouse and to remodel and improve the facilities at the Corporation’s race track; in the event, however, that said $350,000, or any portion thereof, has not been expended for such improvements within 18 months from the date hereof, said sum (or the portion remaining) shall be forthwith paid to the stockholders as dividends.
(b) After the expiration of 18 months, a reasonable reserve for future replacements, additions, expansions and improvements reasonably necessary to conduct and carry on the business of the Corporation.
(c) A reasonable reserve for operating expenses.
(d) The amount of cash required to meet liabilities, other than operating expenses, to become due within one year’s time.
“In keeping with this policy and as additional assurances therefor, it is specifically ordered that:
jfi % ‡ ‡ íjc * •
(c)The Corporation shall make no loans of any of its funds, except that loans may be made to employees (other than officers, directors, or stockholders) not exceeding $1,000 in amount to any one employee.
“It is the intent of this paragraph that the policy of the Corporation in regard to paying dividends to its stockholders be a liberal one.” (Emphasis added.)
The judgment provided for the court to retain jurisdiction of the action for the entry of further orders and judgments, including orders for enforcement.
Following the taking of testimony, the court held the corporation in contempt for failure to comply with the judgment. The court found, that the corporation had violated the agreement in that it:
“(a) Has made loans to parties who were its officers, directors or stockholders.
“(b) Has also failed to comply with paragraph 9 of said Judgment requiring the pay out, as dividends, to stockholders of net cash remaining after allocation of certain reserves, and Respondent, SARASOTA KENNEL CLUB, INC., has not come within the provisions of the portion of paragraph 9, aforesaid, which provides that, 'It is the intent of this paragraph that the policy of the Corporation in regard to paying dividends to its stockholders be a liberal one.’
“(c) Has entered into a ground lease with Jerry Collins under paragraph 5 of the Judgment, aforesaid, which is in derogation of said paragraph 5 and of other provisions of the Judgment, in that it authorizes prepayment of rent by Respondent to Jerry Collins, aforesaid.”
The corporation was ordered to immediately pay an extraordinary dividend of $50 *30 per share and to pay in the future a minimum of 50% of its annual net earnings as dividends pending further order of the court. Should any reserves be created, the corporation was directed to specifically carry them on the corporate books. The corporation was also ordered to pay the reasonable fees of the petitioner’s attorney and certified public accountant. The corporation was permitted to purge itself of the contempt by complying with the terms of the order.
The corporation primarily contends that the evidence does not support the court’s findings of violations of the terms of the consent judgment and that the effect of the order was to modify rather than to enforce the judgment. On the question of sufficiency, we have concluded that there is competent substantial evidence to support the conclusion that the judgment was violated in each of the enumerated particulars. However, we believe that in mandating a future dividend policy, the court impermissibly modified rather than enforced the judgment.
Addressing the findings in turn, the record reflects that from time to time the corporation’s controlling stockholders, Jerry Collins and Jack Collins, withdrew monies from the corporation which were not salaries. Considering the scope of the company’s operation, these were not large amounts of money, and they will presumably be repaid. Nevertheless, the consent judgment prohibits withdrawals of this nature. The corporation’s attempt to characterize them as advances which are not within the judgment proscription against loans because they were not evidenced by promissory notes is patently spurious.
The corporation has operated very profitably since the entry of the consent judgment in 1968. The after-tax earnings of the corporation for the years 1968-1973 compared with the dividends declared for the same years[1] are set forth below:
DATE EARNINGS DIVIDENDS
1968 $288,774 $266,995
1969 430,141 80,660
1970 529,593 265,290
1971 469,056 265,290
1972 584,156 265,290
1973 775,411 275,902
The retained earnings of the corporation have increased from $199,087 in 1968 to $2,266,923[2] in 1974. On September 30, 1974, the corporation had cash, certificates of deposit and other liquid funds of approximately $2,740,000.
The corporation attempted to justify its failure to pay out in dividends the amount of “net cash” as defined in paragraph 9 by saying that the funds were being held back for the purpose of building a new grandstand. There is no doubt that the consent judgment contemplated reasonable reserves for future replacements. However, no reserve for this purpose was ever established in the books of the corporation. In fairness to the corporation’s position, there were some references to the construction of the proposed grandstand in the minutes of the stockholders’ and directors’ meetings. Thus, the minutes of the meeting of directors held on December 6, 1971, provided :
“The President then stated that the new Clubhouse had, during the 1971 racing season, proven to be a tremendously useful addition to the corporation’s racing plant and had contributed materially to the highly successful 1971 racing season. He stated that, however, the attractiveness and utility of the new Clubhouse emphasized the need, which was becoming imminent, to rebuild and upgrade the portion of the corporation’s grand stand not encompassed within the *31 new Clubhouse. He said that it was the practice of other dog tracks in Florida to set aside, annually, one-half of net profits after taxes as a fund for upgrading plant facilities. He said that, in his opinion, Sarasota Kennel Club, Inc. should immediately undertake such a program for funding improvement of its own racing facilities. He estimated that to rebuild and upgrade the old grand stands would require an expenditure of between one million and one million five hundred thousand dollars. After full discussion, upon motion made and seconded, it was unanimously
“RESOLVED, that the officers of this corporation be and they hereby are, authorized, empowered, and directed to give consideration to, and report to this Board of Directors, a plan for the annual setting aside of funds of the corporation sufficient in amount to enable the corporation, within the next two years, to undertake a far-reaching program of rebuilding and upgrading the old grand stand at the racing plant of Sarasota Kennel Club, Inc.”
There are further references to the subject in the minutes of some of the subsequent meetings, but it is evident that the corporation never formulated a definite plan for the establishment of a specific reserve with which to rebuild the grandstand.
The corporation presented the testimony of a banker and an accountant to the effect that the accumulation of funds out of earnings was an acceptable corporate method of financing capital improvements. Thus, the corporation contends that the directors were acting within their proper discretion in determining not to declare more dividends. These are sound corporate principles when one is dealing with a corporation which is not subject to the obligations of a consent judgment. However, in this case, the discretion of the corporate directors was sharply limited by the provisions of the judgment. In light of the company’s earnings, the dividend policy could hardly be said to have been “a liberal one.” Even if the directors had followed the suggestion of their own resolution and set aside one-half of the net profits after taxes in order to build the grandstand, there would still have been money available to pay more dividends. The record amply supports the conclusion that the corporation, through its directors and majority stockholders, violated the letter and spirit of the consent judgment concerning the declaration of dividends.
The third violation which was found by the court pertained to prepayments of rent on the property leased from Jerry Collins. The consent judgment contemplated the lease of the property and specifically provided that the rent should be based upon a percentage of the net profits of the corporation. The judgment specifies that the rent shall be paid annually, which necessarily requires that the profits for a given year first be computed in order to determine the amount of the rent. While the ground lease entered into by the corporation and Collins gives Collins the option to obtain an advance on. the rent not to exceed 75% of the rent paid for the preceding year, the consent judgment contains no such provision. The record reflects that advance rentals were paid to Collins on several occasions. Since the corporation ultimately made profits which warranted the payment of rentals in excess of the amount of advances, apparently the corporation did not actually lose any money.[3] Be that as it may, the payment of advance rentals was not authorized by the consent judgment and must be considered to be a violation of its terms.
Having concluded that the evidence supports the court’s findings, we must now determine whether the effect of the order *32 was to enforce or modify the consent judgment. While there are certain circumstances under which a consent judgment may be modified,[4] no modification was requested, and the case was not tried upon this issue. Therefore, the order can be sustained only to the extent that it is a valid order of enforcement. The requirement to pay a $50 dividend is clearly a vehicle of enforcement. There is hardly any other practical way to enforce paragraph 9 of the judgment. However, we believe the decision to order dividends of not less than 50% of net earnings in future years goes too far. Such a requirement could have been specified as part of the settlement, but it was not. As drafted, the consent judgment leaves a certain amount of discretion in the hands of the directors. It is one thing for the court to look at the past dividend policy and the corporation’s present financial condition and determine that additional dividends must now be paid. It is an entirely different matter to impose a specific dividend requirement for future years. Such a provision more nearly smacks of modification than enforcement and must be stricken.[5]
The accountant’s fees can be taxed in the nature of costs and present no problem. The question of attorneys’ fees is somewhat closer because it could be said that the petition for enforcement was not a true derivative action in which attorneys’ fees are authorized by Fla.Stat. § 608.-131(5) (1973). However, we need not decide whether a suit to enforce the payment of a dividend is a derivative suit within the meaning of the statute,[6] because this litigation was more than that. In essence, this proceeding was a continuation of the original suit which was clearly derivative in nature. The management of the corporation was found to have violated the provisions of the judgment which was entered by consent in order to settle the suit. It logically follows that since the petitioner’s attorneys were entitled to an award of fees in the original suit, they should also be entitled to a further award upon the successful prosecution of the enforcement proceeding.
The remaining contentions of the corporation are without merit and need not be discussed.
The order is affirmed, as modified, by striking that portion which requires the corporation in the future to pay out as dividends a minimum of fifty percent (50%) of its annual net earnings.
McNULTY, C. J., and BOARDMAN, J., concur.

. The dividend figures for 1968 and 1969 include court ordered dividends which were part of the consent judgment.

. Because of a change in the accounting year, the 1974 figure is as of September 30, adjusted by a reduction of the amount of dividends paid in December.

. The interest which the corporation might have earned on the advances was probably offset by monies earned by the corporation on some of the annual payments which were not timely paid.

. See 46 Am.Jur.2d, Judgments, § 688.

. See Hopwood v. Revitz, Fla.App.3d, 1975, 312 So.2d 516.

.According to Fletcher, the slight weight of authority tilts in favor of the view that such a suit is a derivative action. 13 Fletcher Cyc.Corp. (Perm.Ed.), § 5923.1.